[No. B061353. Second Dist., Div. Six. Mar. 16, 1993.]

PLANNED PARENTHOOD OF SANTA BARBARA, VENTURA AND SAN LUIS OBISPO COUNTIES, INC., Plaintiff and Respondent, v. GREG AAKHUS et al., Defendants and Appellants.

## COUNSEL

Price, Postel & Parma, David K. Hughes, Craig A. Parton, Michael D. Imfeld and Robert D. Silver for Defendants and Appellants.

Eskin & Jackson and Hannah-Beth Jackson for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Appellants/defendants Operation Rescue of Southern California (ORSC) and Greg Aakhus, Anna and Riccardo Lemos, and Garvan Kuskey (Aakhus) challenge the trial court's order awarding respondent/plaintiff Planned Parenthood of Santa Barbara, Ventura and San Luis Obispo Counties, Inc., attorney fees in the amount of $36,365 pursuant to Code of Civil Procedure section 1021.5. We affirm.

*Facts*

Respondent provides medical counseling and services, and when appropriate, performs abortions on its premises.

Beginning in 1989, appellants engaged in confrontational conduct at respondent's Santa Barbara clinic. They chased and obstructed the movement of vehicles of clinic patrons entering and leaving respondent's parking lot, and attempted to force anti-abortion literature and fetus dolls through the patrons' car windows. Appellants also chased, insulted and threatened, and photographed and videotaped respondent's patrons as they entered respondent's premises. They also entered respondent's building to convey their feelings to persons inside.

Respondent obtained an injunction in a federal action prohibiting trespasses upon its property by anti-abortion demonstrators. Respondent sought to have the Santa Barbara District Attorney enforce the federal injunction against appellants herein. The district attorney refused, advising respondent to seek a state court injunction against the offending parties.

Pursuant to this advice respondent filed a complaint against appellants in September 1989, asking for damages, a temporary restraining order, preliminary and permanent injunctions, and attorney fees.

A temporary restraining order was granted prohibiting appellants from trespassing onto respondent's property, and from touching or abusing any of respondent's clients whether on or off respondent's property.

Following a hearing on respondent's request for a preliminary injunction, the trial court found: (1) respondent's clinic and parking lot were not open to the public at large, but available only to respondent's patients, staff and invitees; (2) appellants admitted entering respondent's parking lot and clinic without respondent's consent; (3) appellants interfered with respondent's quiet use and enjoyment of its property, "use" meaning the providing of

health care services; and (4) appellants had an alternative means of communicating with respondent's clients by the public sidewalks bordering respondent's clinic.

The court concluded in granting the preliminary injunction that "[respondent] has proven that it will suffer irreparable injury to its property rights, and [respondent] and its patients will suffer irreparable injury to their fundamental rights guaranteed by the United States and California Constitutions, if a preliminary injunction does not issue."

Subsequently, respondent filed its first amended complaint asking for damages and a permanent injunction based on causes of action for trespass, tortious interference with business, public nuisance, and violation of state constitutional rights. According to appellants, respondent's original complaint pled a cause of action for conspiracy to violate federal constitutional laws. Appellants' demurrer to this cause of action was sustained. Respondent filed its first amended complaint omitting any federal constitutional claim.[1]

Respondent's cause of action for violation of state constitutional rights was based on the privacy guaranty pursuant to California Constitution, article I, section 1.[2] Respondent alleged that appellants' conduct "violates and will violate a fundamental right to choose and obtain abortions guaranteed to all women, including women patients and clients of [respondent] . . . . PLANNED PARENTHOOD has standing to assert and seek injunctive relief to protect the fundamental state constitutional rights of its women patients and clients. . . . [¶] . . . [Appellants], and each of them, have threatened to continue their violation of the fundamental constitutional rights of [respondent's] women patients and clients."

Appellants' answer to respondent's first amended complaint alleged that respondent's parking lot was not private for the purpose of exercising First Amendment rights, respondent did not have standing to assert its clients' constitutional right to privacy, respondent had not suffered any actual economic damages, and appellants' actions were protected by the First Amendment.

Five months after appellants filed their answers, the parties signed a settlement agreement which resulted in the filing of a stipulated judgment.

---

[1]Neither respondent's original complaint nor appellants' demurrer thereto is included in the record in this appeal.

[2]The section reads: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

Pursuant to the agreement and judgment, appellants stipulated that a permanent injunction should be issued against them prohibiting them from trespassing onto respondent's property, impeding or obstructing access of respondent's clients to its facility, and placing signs or other tangible objects on respondent's property. The settlement agreement further provided that the trial court retained jurisdiction to rule on respondent's request for attorney fees in its first amended complaint, which issue was to be determined after a court trial.

Following trial on the issue, the court awarded respondent attorney fees pursuant to Code of Civil Procedure section 1021.5. ██ ██ In so ruling, the judge found that respondent's action resulted in the enforcement of a right affecting the public interest, the action conferred a significant benefit on the public or a large class of persons, the necessity and financial burden of the suit made an award of fees appropriate, and fees should be paid by the defendants in the interest of justice.[3]

## DISCUSSION

 The sole issue in this appeal is the correctness of the attorney fee award. Appellants Aakhus and ORSC contend the trial court abused its discretion by granting the award because respondent failed to establish that it met any of the requirements for the award pursuant to Code of Civil Procedure section 1021.5 (hereafter section 1021.5). They also argue that the stipulated judgment prevents the awarding of fees, since pursuant to the underlying settlement they admitted to no conduct upon which the award could be factually based.

*Section 1021.5*

 Section 1021.5 codifies the private attorney general theory. (*Press* v. *Lucky Stores, Inc., supra*, 34 Cal.3d 317.) Under the statute, three requirements must be met in order for a successful party to recover attorney fees: (1) the action has resulted in the enforcement of an important right affecting

---

[3]The court's findings follow the language of section 1021.5 except in one respect. The statute provides in pertinent part: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Subdivision (c) is inapplicable if, as here, there was no monetary recovery. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318, fn. 5 [193 Cal.Rptr. 900, 667 P.2d 704].) Therefore, the court's finding that the interest of justice requires appellants to pay the fees was not mandated.

the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement make the award appropriate. (§ 1021.5; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933-935 [154 Cal.Rptr. 503, 593 P.2d 200].)

Whether a plaintiff has proved each of the three prerequisites for an award of trial fees is a question best decided by the trial court. (*Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547, 555 [202 Cal.Rptr. 400].) Its judgment will not be disturbed unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion. (*Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles* (1982) 130 Cal.App.3d 89, 114 [181 Cal.Rptr. 599]; *Committee to Defend Reproductive Rights* v. *A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 645 [280 Cal.Rptr. 329].)

*Important Right*

Section 1021.5 permits an award in any action resulting in the enforcement of an important right—whether constitutional, statutory or other—affecting the public interest. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 925.) ■ Here, there can be no doubt that a fundamental constitutional principle was enforced or vindicated. (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 319; *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848, 866 [223 Cal.Rptr. 846].)

Appellants state in their brief that their proscribed activities "were directed at the clients of respondent who appellants believed were entering respondent's facility in order to obtain an abortion." Implicit in this statement is the concession that appellants specifically entered onto respondent's private property to disrupt the exercise of the right to abortion. ■ The right to decide whether or not to bear a child is a fundamental constitutional right pursuant to the privacy guaranty of California Constitution, article I, section 1. (*Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252, 262 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118]; *American Academy of Pediatrics* v. *Van de Kamp* (1989) 214 Cal.App.3d 831, 836 [263 Cal.Rptr. 46].)

■ Appellants argue that the enforcement of an important public right did not occur here since this case dealt only with the issue of trespass onto respondent's property, and consequently, did not involve the constitutional issue of privacy or abortion. Even if an important public right was vindicated, they state it was only an indirect result of respondent's suit.

Appellants misinterpret the record.

First, their view that the trial judge remarked this case did not involve the right to abortion is without merit. The court commented only that this case was not concerned with the question of whether the right to abortion was wrong or right.

Second, the constitutional issue of privacy was pled by respondent. Its first amended complaint alleged two distinct injuries, one to itself for appellants' alleged trespasses onto its property, and the other to its clients for appellants' alleged violation of their state privacy right to choose abortion.

Third, in granting respondent a preliminary injunction, the trial court concluded in a written statement of reasons supporting the injunction that it would prevent irreparable injury to respondent's property rights *and* to respondent's patients' fundamental constitutional rights. The settlement agreement specifically states that the stipulated judgment shall adopt the "identical language" of the preliminary injunction. Since the preliminary injunction is based on the aforementioned statement of reasons, we must presume in the absence of a contrary intent that the stipulated judgment also incorporates the court's reasons for the injunction. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

We conclude that the property issue appellants focus on was inextricably tied to the important state privacy right of abortion.

### Significant Benefit

Appellants next contend that the requirement of a significant benefit on the public or a large class was not met here, since the trial court had no evidence from which to conclude that any particular persons benefited from respondent's suit. Appellants point out that respondent did not present any data on the number of its clients, let alone those who obtained abortions at its Santa Barbara clinic. Thus, they argue, the stipulated judgment provides no precedential value.

Appellants misconstrue the law on this issue. The evidence of the size of the population benefited by a private suit is not always required. The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefited. (*Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1011 [223 Cal.Rptr. 914].)

Although fundamental constitutional rights are by nature individual rights, their enforcement benefits the entire public. (*Press* v. *Lucky Stores, Inc.*,

*supra*, 34 Cal.3d at p. 319; *California Common Cause* v. *Duffy* (1987) 200 Cal.App.3d 730, 749 [246 Cal.Rptr. 285].) "Indeed, only by protecting each individual's [fundamental rights] will society's general interests in these rights be secured." (*Press* v. *Lucky Stores, Inc.*, *supra*, 34 Cal.3d at p. 319.)

In this case, the benefit to the public was conceptual and overriding. Because respondent's suit helped to preserve a constitutional privacy right, it necessarily conferred a significant benefit on the public. (*County of San Luis Obispo* v. *Abalone Alliance*, *supra*, 178 Cal.App.3d at p. 867.) Specifically, the stipulated judgment prohibited the performance of acts by appellants which were aimed at obstructing the exercise of the right to abortion. This benefits all women in the state by setting a precedent that their right to abortion includes the *right* in exercising this state constitutional guaranty to be free from interfering acts by members of the public.

Appellants further claim that, even if the award of attorney fees had some impact on respondent's clients, there still was no proof of a significant benefit since none of respondent's clients failed to receive abortions due to appellants' conduct.

This proposition is unavailing. Proof by respondent of the actual deprivation of the right to abortion was unnecessary. Appellants' conduct, involving physical and verbal confrontations aimed directly at respondent's patrons and including the tactics of photographing and videotaping them, significantly and adversely affected the right to abortion. Such right would be a mere mockery under the law if the courts allowed its individual exercise to be challenged by organized public campaigns utilizing tactics of intimidation, humiliation and ridicule.

Furthermore, by photographing and videotaping respondent's clients, appellants actually did deny them their right to privacy under the California Constitution. Our state privacy guaranty, which is broader than the federal privacy right, protects information about a citizen's participation in a medical procedure, including abortion. (*Chico Feminist Women's Health Center* v. *Scully* (1989) 208 Cal.App.3d 230, 241-242 [256 Cal.Rptr. 194].) This protection extends to invasions of privacy by the state as well as private citizens. (*Id.*, p. 242.)

## Burden of Litigation

This statutory element requires that the cost of the litigation to plaintiff be disproportionate to plaintiff's individual stake in the outcome. (*California Common Cause* v. *Duffy*, *supra*, 200 Cal.App.3d at p. 750.) This

criterion is met when the cost of the claimant's legal victory transcends his personal interest in the subject of the suit. (*County of San Luis Obispo* v. *Abalone Alliance, supra,* 178 Cal.App.3d at p. 868.)

■ This element was fulfilled here. Since the district attorney refused to prosecute appellants without respondent first obtaining a state court injunction, respondent's suit was legally necessary. (*California Common Cause* v. *Duffy, supra,* 200 Cal.App.3d at p. 751; *Save Oxnard Shores* v. *California Coastal Com.* (1986) 179 Cal.App.3d 140, 154 [224 Cal.Rptr. 425].) Further, respondent received no monetary recovery. (*Best* v. *California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1469 [240 Cal.Rptr. 1]; *California Common Cause* v. *Duffy, supra,* at pp. 751-752.)

■ Appellants state that respondent had a sufficient business motive to wage this suit. We agree. Nevertheless, this does not mean that the effects of respondent's suit should be interpreted solely as a private success story. The interests of respondent and its clients, rendering and receiving reproductive medical care, are mutual and inseparable. This action was brought to protect both respondent and its patrons; consequently, it cannot be exclusively characterized as a self-serving, private dispute commenced by respondent to protect its own pocketbook. (*County of San Luis Obispo* v. *Abalone Alliance, supra,* 178 Cal.App.3d at p. 868; *In re Marriage of McLucas* (1989) 210 Cal.App.3d 83, 91 [258 Cal.App. 133].)

*Stipulated Judgment*

■ Appellants next argue that the stipulated judgment prevents the awarding of attorney fees, citing *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 794, footnote 14 [244 Cal.Rptr. 655, 750 P.2d 297], for the general rule that a settlement does not act as an admission of liability. They reason, that since they made no admission of either any *conduct* or *liability,* there is no support for the award in the record.[4]

Appellants appear to base their argument on the language of Code of Civil Procedure section 1021.5 that attorney fees may be awarded "to a *successful* party against one or more opposing parties . . . ." (Italics added.) This provision means that the statutory right to attorney fees is limited to the

---

[4]The claim that appellants committed no acts on respondent's property is disingenuous and therefore needs no detailed discussion. The facts that appellants entered onto respondent's property and attempted to dissuade respondent's patrons from obtaining abortions are well documented by the superior court record as well as both parties' briefs on appeal. Appellants' defense in the trial court was not a denial of their acts; instead, they insisted they were simply exercising their constitutional rights to free speech. They further claimed respondent had no standing to assert the constitutional rights of its clients.

successful litigant. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 292 [152 Cal.Rptr. 585].) We presume, in the absence of any discussion by appellants as to this particular provision, that they believe respondent was not a "successful party" because appellants did not admit to any acts of wrongdoing. This implied position is without merit.

 Whether or not a party is successful depends upon whether the underlying action contributed substantially to remedying the conditions at which it was directed. (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 671, 686-687 [186 Cal.Rptr. 589, 652 P.2d 437].) "The critical fact [establishing the propriety of an award] is the impact of the action, not the manner of its resolution. If the impact has been the 'enforcement of an important right affecting the public interest' and a consequent conferral of a 'significant benefit on the general public or a large class of persons' [fn. omitted] a section 1021.5 award is not barred because the case . . . was settled before trial." (*Id.*, at p. 685.)

 Here, the goal of respondent's suit was to stop appellants from entering onto its property and confronting its patrons by verbal and physical acts of persuasion. This objective was entirely achieved by the stipulated judgment which permanently enjoins appellants from trespassing onto respondent's parking lot, from standing in the driveway to respondent's parking lot to impede the movement of vehicles entering or leaving, from trespassing into respondent's building, and from touching or obstructing the movement of respondent's patrons on or off respondent's property.

We conclude that the injunction makes respondent a "successful party" pursuant to section 1021.5.[5] (*Sokolow* v. *County of San Mateo, supra,* 213 Cal.App.3d at p. 245.)

 Appellants also err by focusing the issue of attorney fees on their asserted nonliability. An opposing party's admission or nonadmission of liability is irrelevant for purposes of an award pursuant to section 1021.5.

The statute contains no language requiring as a prerequisite that the opposing party admit to legal wrongdoing.

Just as significantly, our Supreme Court has ruled that a claimant settling a lawsuit may be a "successful party" under the statute. (*Folsom* v. *Butte*

[5]Although respondent asked for damages but received no pecuniary benefit, the thrust of its suit was to stop appellant's documented activities. Respondent's request for damages merely constituted an alternative or additional remedial theory to injunction. (*Sokolow* v. *County of San Mateo* (1989) 213 Cal.App.3d 231, 249-250 [261 Cal.Rptr. 520].) Since the injunction was achieved, respondent can not be held to have been unsuccessful with regard to the primary objective of its action. (*Id.*, p. at p. 249.)

*County Assn. of Governments, supra*, 32 Cal.3d at p. 671.) Attorney fees are "properly awarded after entry of a stipulated judgment, unless expressly or by necessary implication excluded by the stipulation." (*Id.*, at p. 678.) ▮ Here, of course, the stipulated judgment expressly preserved subsequent litigation of the question of respondent's right to attorney fees, so there was no waiver of the fee issue. (*Id.*, at p. 680.)

*Conclusion*

Our decision to affirm the trial court's award of attorney fees to respondent is *not* premised, as appellants argue, on an admission of *liability*. Our opinion is based on the record documenting that appellants committed certain *acts* on respondent's property. This does not signify that appellants made any admission of *liability* for such acts. The words "act" and "liability" are not interchangeable. One may agree that they have engaged in certain conduct without admitting to the legal nature of such conduct.

The trial court's award of attorney fees does not constitute an abuse of its discretion; no statute or legal rule or principle prohibits the award, nor does it constitute a miscarriage of justice. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].)

The award fulfills all of the requirements of section 1021.5. (*Press* v. *Lucky Stores, Inc.*, *supra*, 34 Cal.3d at p. 321.) Moreover, it does not chill appellants' free speech rights, since respondent's private property is not open to the general public. (*Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341].) ▮ Private medical facilities not devoted to general public use are under no constitutional burden to guarantee individuals access for the purpose of physical or verbal expression. (*Planned Parenthood* v. *Wilson* (1991) 234 Cal.App.3d 1662, 1674 [286 Cal.Rptr. 427].) The exercise of the right to free speech at private abortion clinics is appropriate only "within the traditional public forum of the public sidewalk." (*Ibid.*)

▮ In addition, since section 1021.5 is applied generally to all government and nongovernment persons and entities in California (*County of Fresno* v. *Lehman* (1991) 229 Cal.App.3d 340, 349 [280 Cal.Rptr. 310]), appellants' status here as private parties is not a reason precluding the award. (See also *Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 17-18 [267 Cal.Rptr. 618] and *Wilkinson* v. *Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1040 [264 Cal.Rptr. 194], holding that the state right to privacy in art. I, § 1 of the Cal. Const. guarantees protection against both governmental and nongovernmental conduct.)

Finally, there is no evidence in this case that the amount of the award itself is improper.

Since we find no factual or legal basis for reversing the trial court's order awarding attorney fees to respondent, the order is affirmed.

Costs are awarded to respondent as the prevailing party. (Cal. Rules of Court, rule 26(a).) We further grant respondent's request for attorney fees on appeal, the amount to be decided by the trial court. Respondent's request for attorney fees concerning its response to appellants' petition for rehearing is denied.

Gilbert, J., and Yegan, J., concurred.

Appellants' petitions for review by the Supreme Court were denied June 3, 1993. Panelli, J., was of the opinion that the petitions should be granted.